IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(<u>Baltimore Division</u>)

| | | |
|---|---|---|
| **IN Re:** | * | |
| | * | |
| **Q-C RIDGLEY, LLC,** | * | **Case No.: 06-17365-RG** |
| | * | **(Chapter 11)** |
| Debtor. | * | |
| | * | |
| | * | |
| **BALTIMORE COUNTY SAVINGS BANK, FSB** | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | **Adv. Proc. No.: 06-1977-RG** |
| | * | |
| **MARTIN DUBROV; WILLIAM FOREMAN;** | * | |
| **ANNE LOUISE PERLOW; DAVID R. NAKA;** | * | |
| **WILSON H. OLDHOUSER, III;** | * | |
| **Q-C RIDGLEY, LLC,** | * | |
| | * | |
| Defendants. | * | |

**MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Plaintiff, Baltimore County Savings Bank ("BCSB"), by its undersigned attorneys, G. Vann Canada, Jr., Richard L. Costella, and Miles & Stockbridge P.C., hereby submits this Memorandum of Points and Authorities in Support of Motion for Summary Judgment:

**I.    INTRODUCTION**

In the instant adversary proceeding, BCSB has asserted a cause of action for equitable subrogation against the Defendants (as defined herein) and is seeking to be equitably subrogated to the Mercantile IDOT (as defined herein) that was a first priority encumbrance on the Debtor's real property at the time the Defendants took their Intervening IDOT (as defined herein).

## II.   STATEMENT OF UNDISPUTED FACTS.

The following facts are taken principally from: (i) the documentary evidence attached hereto as exhibits; (ii) the Affidavit of Daniel Wernecke attached hereto as *Exhibit E*; (iii) the Affidavit of Richard E. Lattanzi, Esquire attached hereto as *Exhibit F;* (iv) the June 19, 2007, deposition testimony of James P. Quillen, Jr.,[1] the transcript of which is attached hereto as *Exibit G*; and (v) the Parties' Joint Stipulation of Fact attached hereto as *Exhibit N*.

Pursuant to a deed dated August 25, 2003, from American Radiology Services, Inc. to Q-C Ridgley, LLC (the "Debtor" or "QC Ridgley"), the Debtor is the owner of that certain parcel of land lying in the State of Maryland, County of Baltimore, and better known as 7 West Ridgley Road, Lutherville, Maryland 21093 (the "Property").  *See* Debtor's Bankruptcy Schedule A attached hereto as *Exhibit A*.

On October 3, 2003, QD Tartae, LLC ("QD Tartae"), a Maryland limited liability company affiliated with the Debtor through common ownership, applied for a commercial loan from BCSB in the original principal amount of $2,480,000.00 (the "QD Tartae Loan").  A copy of the Business Credit Application for the QD Tartae Loan is attached hereto as *Exhibit B*.  BCSB reviewed the loan application submitted by QD Tartae and on March 1, 2004 issued a commitment letter approving the QD Tartae Loan in the original principal amount of $2,480,000.00.  A copy of the Commitment Letter is attached hereto as *Exhibit C*.  The repayment of the QD Tartae Loan was to be guaranteed by the Debtor and the Debtor's guaranty of the QD Tartae Loan, a copy of which is attached hereto as *Exhibit D,* was intended to be secured by a first priority Indemnity Deed of Trust (the "BCSB IDOT") encumbering the Property. *See* Commitment Letter attached hereto as *Exhibit C*; Affidavit of Daniel R. Wernecke

---

[1] Mr. Quillen is the President of Q-C Enterprises, Inc., which is the managing member of Q-C Triple Net Properties, LLC, which is the sole member of Q-C Ridgley.

attached hereto as *Exhibit E*; Affidavit of Richard E. Lattanzi attached hereto as *Exhibit F*; Deposition testimony of James P. Quillen, Jr. attached hereto as *Exhibit G* at pp. 13-15, 18; Commercial Loan Statement & Affidavit of James P. Quillen, Jr. attached hereto as *Exhibit H*. The QD Tartae Loan was also intended to be secured by an Assignment of Rents and Leases encumbering the Property. *See* Commitment Letter attached hereto as *Exhibit C*; Affidavit of Daniel R. Wernecke attached hereto as *Exhibit E*;

The QD Tartae Loan was intended to refinance a prior loan from Mercantile Safe-Deposit and Trust Company ("Mercantile") to 7 West Ridgley, LLC, another Maryland limited liability company affiliated with the Debtor, in the original principal amount of $2,200,000.00 (the "Mercantile Loan"). *See* Commitment Letter attached hereto as *Exhibit C*; Affidavit of Daniel R. Wernecke attached hereto as *Exhibit E*; Affidavit of Richard E. Lattanzi attached hereto as *Exhibit F*; and Deposition testimony of James P. Quillen, Jr. attached hereto as *Exhibit G* at pp. 11-13. The Debtor had guaranteed the Mercantile Loan and its guaranty was secured by an Indemnity Deed of Trust and Assignment of Leases and Rents (the "Mercantile IDOT") encumbering the Property that was dated August 26, 2003 and recorded in Liber 18712 at folio 299, *et seq.* among the land records of Baltimore County, Maryland. A copy of the Mercantile IDOT is attached hereto as *Exhibit I*. Accordingly, the QD Tartae Loan was also intended to retire the Mercantile IDOT in order that the BCSB IDOT would be a first priority lien on the Property. *See* Commitment Letter attached hereto as *Exhibit C;* Affidavit of Daniel R. Wernecke attached hereto as *Exhibit E*; Affidavit of Richard E. Lattanzi attached hereto as *Exhibit F*.

In conjunction with the QD Tartae Loan, BCSB employed the law firm of Moore, Carney, Ryan & Lattanzi, LLC ("MCRL") to: (i) prepare the loan documents; (ii) perform a title search/examination of Property; and (iii) perform the loan closing/settlement. *See* Affidavit of

Richard E. Lattanzi attached hereto as *Exhibit F*. As such, Richard E. Lattanzi, Esquire ("Mr. Lattanzi"), a licensed Maryland commercial real estate attorney with over thirty-five years of experience in the closing and settlement of commercial real estate transactions, had a title abstract performed on the Property by John J. Phillips, Esquire. *See id.* On or about March 17, 2004, Mr. Lattanzi received and examined the title abstract for the Property. *See id.* Although Mr. Lattanzi performed the title examination on or about March 17, 2004, the effective date of both the title examination and the abstract was November 30, 2003, which represented the most current date through which the Baltimore County Circuit Court Land Records were indexed. *See id.* The Baltimore County Circuit Court Land Records were only indexed through November 30, 2003, because at that time the gap period between the submission of a document for recordation and the date the document was actually indexed was 2½ to 3 months.[2] *See id.* As a result of Mr. Lattanzi's title examination of March 17, 2004, it was found that the sole encumbrance on the Property was the Mercantile IDOT. *See id.*

Immediately prior to the closing/settlement of the QD Tartae Loan on March 30, 2004, Mr. Lattanzi caused the initial title examination to be brought-to-date. *See id.* At that time, the Mercantile IDOT was still the only valid encumbrance on the Property.[3] *See id.* Accordingly, MCRL proceeded to close the QD Tartae Loan for BCSB and in conjunction therewith Mr. Lattanzi caused $2,208,249.86 to be transmitted to Mercantile in order to payoff the Mercantile Loan and retire the Mercantile IDOT. *See id.* Furthermore, on April 13, 2004 Mr. Lattanzi caused the BCSB IDOT to be recorded among the Land records of Baltimore County, Maryland at Liber 19880, Folio 630, *et seq.* A copy of the BCSB IDOT is attached hereto as *Exhibit J.*

---

[2] Until a document is actually indexed in the land records, there is no means to discover its existence other than to physically examine literally hundreds of recorded but unindexed instruments (which, as a practical matter, is an impossible task). *See* Affidavit of Richard E. Lattanzi attached hereto as *Exhibit F*.

[3] As of the closing/settlement date of March 30, 2004, the Baltimore County Circuit Court Land Records were only indexed through January 6, 2004. *See* Affidavit of Richard E. Lattanzi attached hereto as *Exhibit F*.

As a result of a default in the payment of the QD Tartae Loan, BCSB employed MCRL to initiate foreclosure proceedings against the Property pursuant to the power of sale contained in the BCSB IDOT. *See* Affidavit of Richard E. Lattanzi, Esquire attached hereto as *Exhibit F*. In anticipation of initiating foreclosure proceedings, Mr. Lattanzi caused the title to the Property to be examined yet again. *See id.* Upon receiving the title abstract, however, Mr. Lattanzi discovered the existence of an Indemnity Deed of Trust, Security Agreement and Assignment of Contracts, Leases and Rents (the "Intervening IDOT") encumbering the Property that was dated February 13, 2004 and recorded February 20, 2004 among the Baltimore County land records at Liber 19635, folio 131. *See id.* The Intervening IDOT was granted by the Debtor to David R. Naka and Wilson H. Oldhouser, III, as trustees, and purports to secure a loan made by Martin Dubrov, William Foreman, and Anne Louise Perlow (collectively, the "Defendants") to Q-C Triple Net, LLC ("Q-C Triple Net") in the original principal amount of $300,000.00 (the "Q-C Triple Net Loan"). *See* Intervening IDOT attached hereto as *Exhibit K*. Mr. Lattanzi also discovered that the repayment of Q-C Triple Net's obligations to the Defendants were further secured by an Absolute Assignment of Leases and Rents given by the Debtor to the Defendants on February 13, 2004 and recorded February 20, 2004 in Liber 19635, Folio 155, *et seq.* among the Baltimore County Land Records (the "Intervening Assignment").[4] *See* Intervening Assignment attached hereto as *Exhibit L.*

### III.   ARGUMENT:

**A.   Summary Judgment Standard.**

Federal Rule of Civil Procedure 56(c), made applicable to bankruptcy proceedings by Fed. R. Bankr. P. 7056, provides for summary judgment when the evidence shows that, "there is

---

[4] It should be noted that the Mercantile IDOT was still of record in the Baltimore County land records at the time that the Intervening IDOT and Intervening Assignment were recorded. *See* Release of Mercantile IDOT attached hereto as *Exhibit O.*

no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Initially, the moving party must sustain the burden of establishing that there is no genuine dispute of material fact. *Charbonnages de France v. Smith,* 597 F.2d 406 (4th Cir. 1979). The moving party may fulfill this obligation by revealing the absence of evidence supporting the non-moving party's position in the case. *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986).

Once the moving party accomplishes that end, the burden then shifts to the nonmoving party to establish, beyond the pleadings, that there is a genuine issue for trial. *Celotex,* 477 U.S. at 324). While the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in [that party's] favor,"[5] the non-moving party must come forward with affidavits or other evidence which demonstrates there are genuine factual issues to be resolved by a trier of fact. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.,* 475 U.S. 574 (1986); *Anderson, v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). In that respect, the non-moving party "must come forward with more than 'the mere existence of a scintilla of evidence.'" *Anderson*, 477 U.S. at 252. It is not enough for the non-moving party to point out mere "metaphysical doubt" but instead, the non-moving party must identify with precision the facts which are in dispute. *Matsushita,* 547 U.S. at 586. "If the evidence is merely colorable . . . or is not significantly probative, . . . summary judgment may be granted." *Anderson,* 477 U.S. at 249.

The application of Fed. R. Civ. P. 56 to a particular fact pattern does not involve the evaluation of competing facts but, rather, whether factual issues exist which require a trial. *Anderson,* 477 U.S. 242 (1986); *Miller v. Leathers*, 913 F.2d 1085 (4th Cir. 1990), *cert denied*, 498 U.S. 1109 (1991). The inquiry to be made is whether there is an existing controversy as to any material fact which would effect the disposition of the case. *Thomas Everett, Inc. v.*

---

[5] *Hunt v. Cromartie,* 526 U.S. 541, 552 (1999) (quoting *Anderson*, 477 U.S. at 255).

*National Cable Advertising,* 57 F.3d 1317 (4th Cir. 1995). Thus, "'where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial'" and the motion should be granted. *Matsushita,* 475 U.S. at 587. *See also Anderson,* 477 U.S. at 250.

By virtue of the doctrine of equitable subrogation, the Plaintiff is entitled to priority in payment over the indebtedness secured by the Intervening IDOT and the Intervening Assignment to the extent of $2,208,249.86, together with fees, expenses, and interest thereon at the applicable rate from and after March 31, 2004 to the date of repayment.

**B.      BCSB is Entitled to be Equitably Subrogated to the Mercantile IDOT.**

In *G.E. Capital Mortgage Services, Inc. v. Levenson,* 338 Md. 227, 657 A.2d 1170 (1995), the Maryland Court of Appeals, quoting from G.E. Osborne, Handbook on the Law of Mortgages, § 282, p. 570 (2d ed. 1970), held that:

> Where a lender has advanced money for the purpose of discharging a prior encumbrance in reliance upon obtaining security equivalent to the discharged lien, and his money is so used, the majority and preferable rule is that if he did so in ignorance of the junior liens or other interests, he will be subrogated to the prior lien. Although stressed in some cases as an objection to relief, neither negligence nor constructive notice should be material.

*Levenson,* 338 Md. 227. The Court in *Levenson* also quoted, with approval, from *Metropolitan Life Ins. Co. v. Cramer,* 164 Or. 274, 279, 101 P.2d 237, 239 (1940) in which the Court held:

> Our examination of the authorities leads us to the conclusion that, numerically, the greater weight of authority is to the effect that one, advancing money to discharge a lien on real or personal property and taking a new mortgage as security, is held to be entitled to subrogation to the prior lien as against the holder of an intervening lien of which he was excusably ignorant.

*See also Milholland v. Tiffany*, 64 Md. 455, 2 Atl. 831 (1886); *Bennett v. Westfall*, 186 Md. 148, 46 A.2d 358 (1946).

In the present case, the Q-C Triple Net Loan, and the Defendants' corresponding Intervening IDOT and Intervening Assignment, were all made without the actual or constructive knowledge of BCSB.  *See* Affidavit of Daniel Wernecke attached hereto as *Exhibit E*; Affidavit of Richard E. Lattanzi, Esquire attached hereto as *Exhibit F;* Deposition testimony of James P. Quillen, Jr. attached hereto as *Exhibit G* at pp. 44-45 (stating that BCSB was never informed of the Q-C Triple Net Loan); Commercial Loan Statement & Affidavit of James P. Quillen, Jr. attached hereto as *Exhibit H*.  In fact, it was always the intention of BCSB that the QD Tartae Loan would retire the Mercantile Loan and the BCSB IDOT would replace the Mercantile IDOT as a first priority encumbrance on the Property.  *See* Affidavit of Daniel Wernecke attached hereto as *Exhibit E*; Affidavit of Richard E. Lattanzi, Esquire attached hereto as *Exhibit F*.  If BCSB had been aware of the Defendants Intervening IDOT and Intervening Assignment, BCSB would not have consummated the QD Tartae Loan as the BCSB IDOT would not have been a first priority encumbrance on the Property.  *See* Affidavit of Daniel R. Wernecke attached hereto as *Exhibit E*; Affidavit of Richard E. Lattanzi attached hereto as *Exhibit F*.  The QD Tartae Loan was made, and in fact was contingent on, BCSB being granted a first priority encumbrance on the Property.  *See* Commitment Letter attached hereto as *Exhibit C*; Affidavit of Daniel R. Wernecke attached hereto as *Exhibit E*

Moreover, to ensure that the BCSB IDOT would constitute a first priority encumbrance against the Property, Mr. Lattanzi, on behalf of BCSB, conducted a title examination of the Property on March 17, 2003, while also conducting a bring to date title examination of the Property on March 30, 2004 (the date the QD Tartae Loan went to settlement).  *See* Affidavit of Richard E. Lattanzi attached hereto as *Exhibit F*.  For the reasons explained above, both of those title examinations failed to reveal that the Defendants had made the Q-C Triple Net Loan and

that the Intervening IDOT and Intervening Assignment had been recorded against the Property. *See* Affidavit of Richard E. Lattanzi attached hereto as *Exhibit F*. Therefore, there was no reasonable means, and the Defendants cannot point to any reasonable means, by which BCSB could have discovered the Intervening IDOT and Intervening Assignment. *See* Affidavit of Richard E. Lattanzi attached hereto as *Exhibit F*. Furthermore, on the day the BCSB Loan went to settlement, James P. Quillen, Jr., as President of Q-C Enterprises, Inc., the managing member of Q-C Triple Net Properties, LLC, which is the sole member of Q-C Ridgely, executed a Commercial Loan Statement and Affidavit, under oath, averring that the Baltimore Savings IDOT was a "First Indemnity Deed of Trust" encumbering the Property. *See* Commercial Loan Statement and Affidavit attached hereto as *Exhibit H*. Additionally, at deposition Mr. Quillen testified that it was always his intention that the BCSB Loan would be utilized to refinance the Mercantile Loan that was secured by the Mercantile IDOT, and that the BCSB IDOT would be a first priority encumbrance against the Property. *See* Transcript of Deposition of James P. Quillen, Jr, attached hereto as *Exhibit G* at pp. 14-20. Mr. Quillen further testified at deposition that when entering into the Q-C Triple Net Loan, he had an agreement with the Defendants that they would not record the Intervening IDOT and Intervening Assignment until after the BCSB IDOT had been recorded. Transcript of Deposition of James P. Quillen, Jr, attached hereto as *Exhibit G* at pp. 26-27.

  Equitable subrogation is also predicated on the notion that the intervening lienor is in no worse position than before the refinance occurred because the new lender is merely substituted in the place of the prior lender. In that way, a court of equity avoids unjust enrichment on the part of the intervening lienor at the expense of the refinance lender. *Bennett,* 186 Md. at 154-55, 46 A.2d at 361. That is precisely the result that would occur in this case if BCSB were denied the

relief it pursues. The Defendants do not, and cannot, dispute that BCSB's loan proceeds were used to pay off the Mercantile Loan in the amount of $2,208,249.86. *See* Defendants' Answer to Plaintiff's Interrogatory No. 7 attached hereto as *Exhibit M*. In addition, there can be no doubt that on the dates that the Defendants entered into the Q-C Triple Net Loan and recorded the Intervening IDOT and Intervening Assignment, they had bargained for a second priority lien position junior to the Mercantile IDOT because on both of those dates the Mercantile IDOT was still of record and the Defendants had complete constructive and actual knowledge of the same. *See* Defendants' Answer to Plaintiff's Interrogatory No. 9 attached hereto as *Exhibit M*; Joint Stipulation of Facts attached hereto as *Exhibit N;* Release of Mercantile IDOT attached hereto as *Exhibit O.* Consequently, if BCSB is granted relief in the form of equitable subrogation to the extent of $2, 208,249.86 (the amount paid to retire the Mercantile Loan and IDOT), the Defendants will be in precisely the same position that they were at the time they entered into the Q-C Triple Net Loan and recorded the Intervening IDOT and Intervening Assignment.

**CONCLUSION:**

For the reasons stated above, the Plaintiff's Motion for Summary Judgment should be granted and the BCSB IDOT should be given priority over the Defendants' Intervening IDOT to the extent of $2,208,249.86, together with fees, expenses and interest thereon at the applicable rate from and after March 31, 2004 to the date of repayment.

Dated: June 29, 2007.

          Respectfully submitted,

          /s/ Richard L. Costella
          G. VANN CANADA, JR.
          Fed. Bar No.: 02147
          RICHARD L. COSTELLA
          Fed. Bar No.: 14095
          Miles & Stockbridge P.C.
          11 North Washington Street, Suite 700
          Rockville, Maryland 20850
          Telephone (301) 762-1600

          *Attorneys for Baltimore County Savings Bank*

## CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of June, 2007, a copy of the foregoing ***MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT*** was sent via first class mail, postage prepaid, to the following:

>Barry Bach, Esquire
>Seema Reznick, Esquire
>Hodes, Ulman, Pessin, & Katz, P.A
>901 Dulaney Valley Road, Suite 400
>Towson, Maryland 21204-2600
>
>Office of the United States Trustee
>101 WEST LOMBARD ST, SUITE 2625
>BALTIMORE, MD 21201
>
>/s/ Richard L. Costella
>Richard L. Costella